IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

STATE AUTO PROPERTY
AND CASUALTY INSURANCE CO.,

            Plaintiff,

v.                                    CIVIL ACTION NO.  2:15-cv-00809

FAS CHEK ENTERPRISES, INC., et al.,

            Defendants.

**MEMORANDUM OPINION & ORDER**

Pending before this court is the plaintiff's Motion for Default Judgment [Docket 9]. For the reasons stated below, this motion is **GRANTED**.

**I.    Factual Background**

Defendant Fas Chek Enterprises, Inc. ("Fas Chek") is a West Virginia corporation with a store located at 405 Washington Street, Charleston, West Virginia. On November 6, 2014, Billy Dyess filed a civil complaint in state court against Fas Chek, its manager, and its employees, alleging that the manager and employees attacked and assaulted him when he visited the Charleston store with his son and grandson on September 11, 2014. Specifically, Mr. Dyess alleges that he and the Fas Chek manager "had words," and the manager threatened Mr. Dyess while following him and his family out of the store. (Declaratory J. Compl. [Docket 1], at 3 (quoting *Dyess v. Fas-Chek*, Civ. Compl. [Docket 1-1])). Then, the manager allegedly grabbed Mr. Dyess by the neck and started to choke him, at which point Mr. Dyess's son intervened. Mr. Dyess claims that two other Fas Chek employees soon became involved and attacked Mr.

Dyess's son with a wooden pallet, rendering him unconscious. Another employee grabbed a handgun as more employees came out from the back of the store. Finally, Mr. Dyess and his son ran from the scene and called the police. Soon after, Mr. Dyess filed suit against Fas Chek in the Circuit Court of Kanawha County, West Virginia, alleging damages for medical bills, loss of wages, loss of cell phone, physical damage, and emotional damage. (Declaratory J. Compl., Ex. 1, *Dyess v. Fas-Chek*, Civ. Compl. [Docket 1-1], at 4).

Upon receiving the civil complaint, Fas Chek asserted a claim for insurance coverage under its Commercial General Liability Coverage policy (the "Policy") issued by the plaintiff, State Auto Property and Casualty Insurance Co. ("State Auto"). The Policy, effective January 1, 2013, through January 1, 2014, provides two coverages for Fas Chek. (*See generally* Declaratory J. Compl., Ex. 2, Commercial General Liability Coverage Form [Docket 1-2]). Coverage A insures against "bodily injury" and "property damage" liability caused by an "occurrence" taking place on the "coverage territory" and "during the policy period." (*Id.* at 1). Coverage B insures against "personal and advertising injury caused by an offense arising out of [the insured's] business" that "was committed in the 'coverage territory' during the policy period." (*Id.* at 5).

The Policy, however, contains several exclusions. With respect to Coverage A, the insurance does not apply to any bodily injury or property damage "expected or intended from the standpoint of the insured." (*Id.* at 1). And with respect to Coverage B, the insurance does not apply to personal and advertising injury "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" (*Id.* at 5).

These provisions form the basis of State Auto's declaratory action before this court. State Auto claims that the events taking place at the Charleston Fas Chek store on September 11, 2014,

2

do not fall under Coverage A or B, and the Policy expressly excludes coverage by State Auto for any causes of action brought as a result of the incident. On January 20, 2015, State Auto filed a complaint in this court against Fas Chek, its manager and employees, and Mr. Dyess (the "Complaint"), asking this court to declare that (1) State Auto "has no duty to defend or indemnify Fas Chek, its managers, or employees"; (2) the Policy "provides no coverage for, and is not applicable to, the claims of [Mr. Dyess] against Fas Chek, its managers, or employees"; and (3) State Auto "has no duty to insure Fas Chek, its managers, or employees, for the claimed loss." (Declaratory J. Compl. [Docket 1], at 11).

Mr. Dyess received service of the Complaint on February 6, 2015. (Proof of Service [Docket 4]). He did not answer the Complaint or otherwise defend himself against it. As a result, on March 10, 2015, the Clerk entered a default against Mr. Dyess, pursuant to Federal Rule of Civil Procedure 55(a). (Entry of Default by Clerk [Docket 7]). Under Rule 55(b)(2), State Auto now moves for the court to enter default judgment against Mr. Dyess.

**II.     Legal Standard**

District courts may enter default judgment against a properly served defendant under Federal Rule of Civil Procedure 55. Rule 55(a) provides for entry of default where "a party against whom a judgment or affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). After default is entered by the clerk, a party may move the court for default judgment under Rule 55(b). Indeed, applying to the court for default judgment is necessary where, as here, the plaintiff's claim is not for a sum certain or made certain by computation. Fed. R. Civ. P. 55(b).

Upon default, all of the well-pleaded facts alleged in the complaint as to liability may be taken as true. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("[T]he

defendant, by his default, admits plaintiff's well-pleaded allegations of fact[.]" (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "Although the clear policy of the Rules is to encourage dispositions of claims on their merits, trial judges are vested with discretion, which must be liberally exercised, in entering such judgments and in providing relief therefrom." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) (citations omitted). The court, however, must not enter default judgment that "differ[s] in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

### III. Discussion

In the past, this court has hesitated to enter default judgment in a suit for declaratory relief, especially in the area of insurance disputes. *See Teachers Ins. Co. v. Prather*, No. 2:11-cv-00397, 2012 WL 90095, at *2 (S.D. W. Va. Jan. 11, 2012) ("When a declaratory judgment action is brought by an insurance carrier, the suit may influence the way courts later interpret other identical policies."). Generally, I decline to enter default judgment in such cases when the nonmoving party has demonstrated opposition to it in some manner. *See id.* (stating that "less drastic sanctions" are more appropriate when the nonmovant has indicated its opposition to default judgment); *see also Toler v. Gov't Emps. Ins. Co.*, No. 2:14-cv-29582, 2015 WL 1431247, at *2–3 (S.D. W. Va. Mar. 27, 2015) (denying default judgment when the plaintiff had taken action, albeit delayed, against the defendant's counterclaim). Here, however, Mr. Dyess, despite receiving proper service of the Complaint and the Clerk's entry of default, has made no attempts to defend himself in this matter. The court, therefore, can properly grant default judgment against him at this time. *See Scottsdale Ins. Co. v. Bounds*, No. BEL-11-2912, 2012 WL 1576105, at *3 (D. Md. May 2, 2012) ("The Court may grant a default judgment when a properly served defendant fails to respond to a complaint for declaratory relief.").

Nevertheless, because entering default judgment against Mr. Dyess necessarily implicates the other defendants—who, according to the docket, have not yet been served with the Complaint—I opt to examine the merits of State Auto's declaratory action first. *See* Restatement (Second) of Judgments § 33 (1982) (stating that "a court should not make a declaration upon default on the basis of the pleadings alone but should require the plaintiff to present enough evidence to warrant the granting of declaratory relief").

### A. West Virginia Contract Interpretation Principles

I must apply general contract interpretation principles when examining an insurance contract. *See Payne v. Weston*, 466 S.E.2d 161, 166 (W. Va. 1995) ("In West Virginia, insurance policies are controlled by the rules of construction that are applicable to contracts generally."). This means that "language in an insurance policy should be given its plain, ordinary meaning." *Am. States Ins. Co. v. Tanner*, 563 S.E.2d 825, 829 (W. Va. 2002). In fact, if the provisions of an insurance policy contract "are clear and unambiguous," they are not "subject to judicial construction or interpretation" at all. *Keffer v. Prudential Ins. Co. of Am.*, 172 S.E.2d 714, 715 (W. Va. 1970). Instead, "full effect will be given to the plain meaning intended." *Id.* Where the language under consideration is ambiguous, however, it should be "strictly construed against the insurance company and in favor of the insured." *Kanawha Valley Radiologists, Inc. v. One Valley Bank, N.A.*, 557 S.E.2d 277, 282 (W. Va. 2001).

### B. Coverage A

Turning to the provisions of the Policy, I first consider whether the September 11, 2014 incident is insured by Coverage A, which provides, in relevant part, as follows:

> 1. Insuring Agreement
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this

> insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. . . .
> b. This insurance applies to "bodily injury" and "property damage" only if:
>   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; . . .

(Declaratory J. Compl., Ex. 2, Commercial General Liability Coverage Form [Docket 1-2], at 1). In Count I of its Complaint, State Auto contends that Coverage A does not apply to Mr. Dyess's claims because his alleged damages were not caused by an "occurrence." "Occurrence" is defined by the Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 12). The Policy does not further define "accident," and so I use the term's plain meaning: "an event or condition occurring by chance or arising from unknown or remote causes." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 11 (Merriam-Webster, Inc. 2002). Taking the facts of the Complaint as true, Mr. Dyess's bodily injuries and property damage did not arise by accident but were instead the result of intentional conduct by Fas Chek employees. Therefore, because Mr. Dyess's injuries were not "caused by an occurrence" as defined by the Policy, I **FIND** that Coverage A does not insure Fas Chek, its manager, or its employees against Mr. Dyess's claims.[1] Accordingly, State Auto has no duty to provide defense or indemnification for Mr. Dyess's bodily injuries or property damage under the provisions of Coverage A.

### C. Coverage B

I next consider whether the September 11, 2014 incident is insured by Coverage B, which provides, in relevant part, as follows:

> 1. Insuring Agreement

---

[1] Because I find that Coverage A does not apply to Mr. Dyess's bodily injuries, I do not consider Count II of State Auto's Declaratory Judgment Complaint, which alleges that Mr. Dyess's claims for bodily injury are also excluded from coverage by the exclusionary provisions of Coverage A.

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. . . .
> b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period."

(Declaratory J. Compl., Ex. 2, Commercial General Liability Coverage Form [Docket 1-2], at 5). In Count III of its Complaint, State Auto contends that Coverage B does not apply to Mr. Dyess's claims because his injuries do not qualify as "personal and advertising" injuries.[2] The Policy defines "personal and advertising injury" as

> Injury, including consequential "bodily injury," arising from one or more of the following offenses: a. False arrest, detention or imprisonment; b. Malicious prosecution; c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor; d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; e. Oral or written publication, in any manner, of material that violates a person's right of privacy; f. The use of another's advertising idea in your "advertisement"; or g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

(*Id.* at 12). Seeing no ambiguities, I give this language its plain meaning. Importantly, the conceivable offenses allegedly committed by the Fas Chek employees against Mr. Dyess (assault and battery, intentional infliction of emotional distress, negligence, and so on) are not included in this provision. Because Mr. Dyess's alleged injuries did not arise from one or more of the listed offenses, his claims do not constitute "personal and advertising" injury. Therefore, **I FIND** that Coverage B does not insure Fas Chek, its manager, or its employees against Mr. Dyess's claims,

---

[2] State Auto mistakenly identified both the second and third counts in its complaint as "Count II." In the interest of clarity, I refer to the third count as "Count III."

and State Auto has no duty to provide defense or indemnification for Mr. Dyess's injuries under the provisions of Coverage B.[3]

### IV. Conclusion

The plain language of Coverage A and Coverage B of the Policy issued by State Auto to Fas Chek provides that the September 11, 2014 incident between Billy Dyess and Fas Chek employees is not covered. Coverage A does not cover the incident because it did not arise from an "occurrence." Coverage B does not cover the incident because Mr. Dyess's alleged damages do not fall within the definition of "personal and advertising injury." Accordingly, the court **GRANTS** the plaintiff's Motion for Default Judgment [Docket 10] as to defendant Billy Dyess, thereby awarding State Auto the declaratory judgment relief sought in its Declaratory Judgment Complaint with respect to Mr. Dyess.

The court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record and to the defendants.

ENTER: April 27, 2015

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

---

[3] Because I find that Coverage B does not apply to Mr. Dyess's claims, I do not consider Count IV of State Auto's Declaratory Judgment Complaint, which alleges that Mr. Dyess's claims are also excluded from coverage by the exclusionary provisions of Coverage B.